## THERESA C. GRAHAM, Appellant, *v.* JOHN GRAHAM, Respondent.

*Ante-nuptial contract barring dower — consideration for.*

Under the statutes of this State an ante-nuptial contract, entered into for the purpose of barring dower, is not valid or effectual unless supported by some substantial valuable consideration, either an estate in lands or a pecuniary provision, received by or secured to the intended wife; a nominal consideration will not support a contract relinquishing a right to dower.

The burden resting upon the husband to establish clearly that the wife understood the agreement executed by her, considered by Follett, J.

Appeal by the plaintiff, Theresa C. Graham, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 6th day of May, 1892, on a decision, rendered at the New York Special Term, dismissing the complaint on the merits, without costs.

In March, 1890, Theresa Cassidy and John Graham became acquainted; in June of the same year they became engaged, and July 5, 1890, they intermarried, she being a spinster aged forty-two years, and he a widower aged sixty-one years, with children. At the time of the marriage the defendant owned real estate worth $100,000, in which the value of the plaintiff's inchoate right of dower would have been $8,900. July 3, 1890, a contract was executed between them, under their hands and seals, which was duly acknowledged, and of which the following is a copy :

"This agreement, made and entered into this third day of July, 1890, between John Graham, of the city, county and State of New York, party of the first part, and Theresa Cassidy, of said city, party of the second part,

"*Witnesseth,* That, whereas a marriage is about to be had and solemnized between the said parties, and the said party of the first part is desirous of making provision for a fit and proper settlement to and for the use and benefit of the said Theresa Cassidy, his intended wife. Now, therefore, the said party of the first part doth agree that, if the said marriage shall be had and solemnized as aforesaid, he shall or will, on or before the date of such marriage, or just previous thereto, give, assign, transfer and set over unto the said Theresa Cassidy, the sum of one dollar in cash. To have and to hold the same unto her, the said Theresa Cassidy, to and for her sole and separate use, benefit and behoof forever, and the said Theresa Cassidy, in consideration of the payment to her of the aforesaid sum of one dollar, and in further consideration of love and affection, and willingness to become the wife of the said John Graham, the party of the first part, doth, for herself, her heirs, executors and administrators, covenant and agree, with the said John Graham, that for and in consideration of the premises, that said provision, so made as herein specified, shall be in full satisfaction of her dower in his estate, and shall bar her from claiming the same if she shall survive him after said marriage; and further, if the said marriage shall be had and she shall survive him, that she will not claim any share in his personal estate unless some part thereof shall be given her by his will or act done by him subsequent to the execution of these presents.

"And the said Theresa Cassidy further covenants and agrees, in

consideration of the premises, and of the marriage about to be celebrated betwen her and the said John Graham, in case he, the said John Graham, shall hereafter acquire property, real or personal, by purchase or otherwise, that she will, on request, sign and execute for him, his heirs, executors or administrators, any or all releases of dower or quit-claims in such property, and hereby releases and quit-claims to the said John Graham, and to his heirs, executors or administrators, all and every right, title or interest in and to any of the estate or property of the said John Graham, which he now owns, or which he may hereafter acquire.

"In witness whereof the said parties hereto have interchangeably set their hands and seals, with full knowledge of the contract herein, at the city of New York, and on this the third day of July, A. D. 1890.

"JOHN GRAHAM.  [L. S.]

"THERESA CASSIDY." [L. S.]

"In presence of

 "T. McLean Shaw.

 "Isaiah H. Hanna."

September twenty-two the contract was recorded in the office of the register of the city and county of New York, in Book 1 of Miscellaneous Records. Prior to the execution of this contract, another one had been drawn under the instructions of the defendant, which was the same in all respects, except that it recited a consideration of $5,000 instead of one dollar. The litigants agree that the terms of the contract were not agreed to before the parties met at the office of the defendant's counsel to execute it. On this occasion the defendant offered the plaintiff $5,000, which she refused to accept, and the contract was redrafted and a consideration of one dollar substituted, which was not paid.

About five months after the marriage the parties became estranged, and the defendant conveyed some of his real estate to a daughter. November 28, 1891, this action was brought to have the contract adjudged null and void on the ground that it was procured to be executed by the plaintiff by fraud, and that she signed it without knowing the contents.

*George Bliss*, for the appellant.

*James A. Dearing*, for the respondent.

FOLLETT, J. :

Originally the word "jointure" denoted a joint estate limited to husband and wife for life, or in tail, which was not created for the purpose of barring dower, but because, prior to the statute of 27 Henry 8th, chapter 10, the title to the greater part of the land in England was in the hands of trustees for the use of sundry persons; and as a wife was not dowable of uses, her father or friends, upon the marriage, procured the husband to create a jointure, that there might be a competent provision for the wife after the husband's death. (1 Cruise's Dig., tit. 7, Jointure, § 2; *Vernon's Case,* 4 Rep., 1 B.)

Indeed, if a man, in consideration of a marriage afterwards to be had with a woman, created an estate in jointure, in full satisfaction of all dower which, after marriage, might accrue to her in his lands, and they intermarried, that was no bar of dower at common law for two reasons : ( 1.) Because no right could be barred until it accrued. ( 2.) Because no right or title to an estate or freehold could be barred by a collateral satisfaction, so it was found impossible to bar a woman of dower by any assurance of lands either before or during the marriage. (Cruise's Dig., tit. 7, Jointure, § 1; *Vernon's Case,* 4 Rep., 1, B.)

For the prevention of the mischiefs arising out of lands being held for the use of others the statute of 27 Henry 8th, chapter 10 (4 Pick. Stat., 359), known as the Statute of Uses, was passed, which transferred the legal estate of the lands of England to those who were entitled to their use. Thus, all the married women of England would have become dowable in the lands theretofore held to the use of their husbands, and, also, would have held the lands settled on them in jointure, but for section 6 of that chapter which provided that women with jointures, then or thereafter, provided should not have dower in the residue of their husband's estates. By a subsequent clause the wife was empowered to refuse a jointure assured during marriage. ( *Vernon's Case,* 4 Rep., 2 A., note 1, by Thomas.) The word jointure has now been so extended by the statutes of England and of this State as to include a sole estate limited to the wife alone or a pecuniary provision in lieu of dower. Sections 6 and 9 of chapter 10, 27 Henry 8th, before referred to were enacted almost *verbatim* in this State in sections 8 and 9 of chapter 4 Laws of 1787 (2 J. & V., 2), which provisions were continued unchanged until

the adoption of the Revised Statutes.    (1 R. L., 1801 [K. & R.], 51;
1 R. L., 1813, 56.)   This statement of the origin of the law of jointure
shows, we think, that its central idea was some provision for the
benefit of the wife as a consideration for her relinquishment of her
right to dower.   It will be observed that the decisions of the courts
in England and the earlier cases in this State are founded on
statutes which are identical.   There are two sorts of jointures created
by the statutes of this State:   (1.) By an ante-nuptial agreement
executed by both parties, which prevents the right to dower from
ever arising.   (2.) A jointure created before marriage but not
assented to by the betrothed wife, or created after marriage, which,
when accepted in lieu of dower, bars it, but not before.   (1 R. S.,
741, §§ 9, 10, 11 and 12; 1 Cruise's Dig., chap. 1, § 25.)   Section 11
(1 R. S., 741) provides that " any pecuniary provision that shall be
made for the benefit of an intended wife and in lieu of dower, shall,
if assented to by such intended wife, as above provided, be a bar to
any right or claim of dower of such wife in all the lands of her
husband."   Under the statutes a valid jointure or a pecuniary pro-
vision in the nature of a jointure must be supported by some valuable
consideration as a compensation for the relinquishment of the right
to dower.   (*McCartee* v. *Teller*, 2 Paige, 511–560; *Hawley* v. *James*,
5 id., 313–447; Rev. on other points, 16 Wend., 61; *Power* v. *Sheil*,
1 Molloy's Ch., 296; *Curry* v. *Curry*, 10 Hun, 366; *Ennis* v. *Ennis*,
48 id., 11–14; 4 Kent's Com., 56, note *a*, 1; Co. Litt., 36 *b*, 37 *a*.)

Some of the authorities go further and hold that an ante-nuptial
jointure or provision in lieu of dower must be a fair equivalent for
the right relinquished.   But we find no case, English or American,
which holds that an ante-nuptial contract, entered into for the pur-
pose of barring dower, is effectual unless some provision is made
for the intended wife, except in case the intended wife has property
which would on marriage become the husband's, and the contract
provides that neither shall become entitled to any interest in the
estate of the other.   In some jurisdictions such a consideration is
held to be sufficient to support a contract relinquishing dower with-
out any provision being made for the wife.   No estate in lands or
pecuniary provision having been received by or secured to the
plaintiff, the ante-nuptial contract will not bar her claim to dower,
under the Revised Statutes, in case she survives her husband.

Is a contract relinquishing the right to dower without any consideration valid and sufficient under the statutes for the protection of married women? Section 4 of chapter 200 of Laws of 1848, and section 3 of chapter 375 of Laws of 1849, provide: "All contracts made between persons in contemplation of marriage shall remain in full force after such marriage takes place."

In *Curry* v. *Curry* (*supra*) it was held that the section quoted had no application to contracts creating jointures, or providing pecuniary provisions in lieu of dower, which had previously been authorized and regulated by the Revised Statutes, and we are of the opinion that it was not the intent of the legislature that this section should change these statutes in respect to ante-nuptial contracts relating to dower.

We are also of the opinion that the plaintiff is entitled to a new trial upon the facts. In *Kline* v. *Kline* (57 Penn. St. Rep., 120 ; *Kline's Estate*, 64 id., 122), it was held that persons engaged to be married stand in a confidential relation to each other, demanding the exercise of the utmost good faith on the part of both, and that an ante-nuptial contract executed by the intended wife relinquishing her interest in the estate of her intended husband will not be supported, unless there is a full and free disclosure of all the circumstances bearing upon the contemplated agreement.

These cases were followed in *Pierce* v. *Pierce* (71 N. Y., 154), where it was said: "We are of the opinion that the contract in question cannot be upheld, for the reason that the evidence establishes, beyond any controversy, that it was executed by the respondent, under a belief — which was created by the conduct and declarations of the deceased — that it contained more beneficial provisions in her favor than were contained in the same, and that the deceased, taking advantage of the confidential relationship existing between him and the respondent, who was the intended wife of the deceased, he was chargeable with fraud and misrepresentation in procuring her signature to the same.

Ante-nuptial contracts, whereby the future wife releases her claim to her right of dower and all other rights to the estate of her husband upon his decease, are fully recognized in law. When fairly made and executed, without fraud or imposition, they will be enforced by the courts. The surrender and release of rights to be

acquired by the intended wife by the marriage relation must, however, be regarded with the most rigid scrutiny ; and courts will not enforce contracts of this nature against the wife where the circumstances establish that she had been over-reached and deceived or been induced, by false representations, to enter into a contract which does not express or carry out the real intention of the parties. The relationship of parties who are about to enter into the married state is one of mutual confidence and far different from that of those who are dealing with each other at arms length. This is especially the case on the part of the woman; and it is the duty of each to be frank and unreserved when about to enter into an ante-nuptial contract by a full disclosure of all facts and circumstances which may in any way affect the agreement."

The plaintiff testified that on Sunday, June twenty-ninth, six days before their marriage, the defendant said: "If we are going to be married, I think it is necessary that you should see a lawyer. I said, well, I don't think so. He said, business is business. I said my marriage is not business. I have nothing to see a lawyer about. He said, will you come and see mine, and I said yes, certainly I will. He did not tell me why he wanted me to go and see a lawyer." They then made an appointment to meet at the corner of Broadway and Fulton street, on Thursday following, at an hour named, and go together and see his lawyer, which appointment was kept, and resulted in the contract under consideration. She testified that its terms were never talked over. The defendant was examined as a witness in his own behalf, and testified: "I have heard Mrs. Graham's testimony as to what took place between us prior to our visit to Mr. Shaw's office. I have to say about that, that I told her I would like to have my real estate matters fixed up; so as I would have no interfering; so as I could use it freely; whatever I would like — sell it, or to buy real estate, and nobody to interfere. I told her that before I went to Mr. Shaw's office. She said all right. I went to Mr. Shaw's office, and told him I would like to have such a paper made out, and then, subsequently, I took Miss Cassidy down there."

The defendant does not testify that the nature of the contract or its effect was explained to the plaintiff, nor that there was any conversation about dower, or the release of all of her interest in his real

and personal estate. The attorney who drafted the contract testified that, after reading the first paper through, she said: "The paper is all right, with the exception of the $5,000. I will not take any of Mr. Graham's money. I am not marrying him for money. Mr. Graham said, well, I won't carry out the ceremony unless you release your dower right in my property. She said, I am willing to, but I don't want to take any money."

This is the only evidence that the subject of releasing dower was ever the subject of conversation between the parties. Neither the plaintiff nor the defendant testified that such language was used, but if it was, it comes very near being a threat which would be likely to influence a woman on the eve of her intended marriage. Both litigants, the draughtsman of the contract, and the notary who took the acknowledgment, the only persons present when it was formulated and executed, testified that the plaintiff refused to receive $5,000 in cash and execute a contract cutting off her rights in the estate of her intended husband on the ground that the marriage ought not to rest on a pecuniary consideration.

The finding does not seem wholly natural and reasonable that the plaintiff freely, and with a perfect understanding of the intended effect of this contract, executed it without any pecuniary consideration after having absolutely refused to receive $5,000 and execute the first proposed contract. On a retrial the evidence may be of a character that will sustain the burden resting on the defendant to convince the court by the most cogent proofs that the plaintiff fully understood the effect of the agreement, and that it was executed on her part freely and without compulsion; but we are not satisfied that the evidence in this record fully justifies such a conclusion.

The judgment should be reversed both on the law and the facts and a retrial granted, with costs to abide the event.

Van Brunt, P. J.:

I am of the opinion that the provision in lieu of dower must be substantial, not merely nominal, in order to bar dower. I concur.

O'Brien, J.:

I concur with Mr. Justice Follett in his view of the law. An ante-nuptial contract to bar a woman's dower should be based on a valuable consideration. The facts in this case show that no adequate

compensation was made for the relinquishment of her dower right, and she, therefore, apart from the question of fraud, was entitled to have the agreement set aside.

Judgment reversed both on the law and the facts and a retrial granted, with costs to abide the event.