REBECKA SCHNIBBE, Plaintiff, *v.* LOUIS SCHNIBBE et al., Defendants.

(Supreme Court, Kings Special Term, November, 1919.)

Dower — action for — antenuptial agreement — consideration — statutes — Real Property Law, §§ 197, 198.

> Where in an action for dower it appears that an antenuptial agreement between plaintiff, a widow worth $35,000, and her deceased husband, a widower with children, who was worth nearly $200,000, by which she covenanted to release, in consideration of the payment of one dollar, her dower and rights as widow in his estate, was fairly and freely entered into by her under the advice of a competent attorney; that it is a contract which a reasonably prudent person, situated as plaintiff was, would make; that it complied in form to the requirements of sections 197 and 198 of the Real Property Law; was fully performed on the part of the husband; that plaintiff received her support from him while he lived, and at his death she had her own property intact, the antenuptial agreement will be enforced against her and the complaint dismissed upon the merits.

> The words " pecuniary provision " in section 198 of the Real Property Law, strictly mean a provision consisting of money, and as the husband's covenant that one dollar should be paid to plaintiff out of his estate in consideration of the marriage and also in lieu of dower or her rights as widow in his estate, was fully performed, the statute was satisfied.

ACTION for dower.

Frederick N. Van Zandt, for plaintiff.

George J. McDonnell, for defendants.

SCUDDER, J.   The sole issue in the case is the validity of the release of dower contained in an antenuptial agreement between the plaintiff and her deceased husband, Louis Schnibbe.

This antenuptial agreement provides as follows:

" This agreement made the ——— day of June, 1919, between Louis Schnibbe, of the Borough of Brooklyn, City of New York, party of the first part, and Rebecka Hilsman of the same place, party of the second part,

" WHEREAS, a marriage is about to be had and solemnized between the said parties; and the party of the first part is desirous of making provision for a fit and proper settlement to and for the use and benefit of the said Rebecka Hilsman, his intended wife:

"*Now Therefore,* the said party of the first part doth hereby agree that if the said marriage shall be had and solemnized as aforesaid, that the said Rebecka Hilsman shall receive, have and be provided for as follows, to wit:

" First. She shall have, hold, retain and dispose during her life, or by will of any and all property, real or personal, which she now has or may hereafter receive or become entitled to, as her own; and the party of the first part will not claim to have or pretend to have any right or interest in or to any part of her said estate or of the income thereof, but will permit the same to pass by her will to her devisees and legatees or by descent to her heirs at law, or by distribution to her next of kin as the same would pass if she had remained single and unmarried.

" Second. In case she should happen to survive the said Louis Schnibbe, he agrees to make provision by his last will and testament or otherwise, that she shall have and receive out of his estate the sum of One ($1.00) Dollar in consideration of her said marriage and also in lieu of dower or her rights as widow in his estate, and in case no such provision is made as aforesaid, then such sum is to be paid out of his estate, at all events, by those who shall administer the same.

" Third. And the said Rebecka Hilsman, in consideration of the premises, hereby covenants and agrees that in such case such sum of One Dollar ($1.00) shall be paid to her as aforesaid, in the event of her surviving the said Louis Schnibbe, that she will accept and receive the same in full satisfaction of her dower in his estate and shall bar her from claiming the same, either in his real or personal estate, and that she will execute and deliver any release or releases of such dower rights to his heirs at law, devisors, or legal representatives on demand thereof.

" *In Witness Whereof,* the parties to this instrument have hereunto set their names and seals the day and year first above written.

" In the presence of      LOUIS SCHNIBBE    [L. S.]
    F. W. KELLER.        REBECKA HILSMAN  [L. S.]"

Plaintiff challenges the agreement (1) on the ground of fraud or mistake and defendants' failure to bear the burden of proof as to fairness and full disclosure by Louis Schnibbe to plaintiff; and (2) on the ground that the agreement did not make a " pecuniary provision " for plaintiff's benefit in lieu of dower within the meaning of section 198 of the Real Property Law.

1. The first of these grounds depends for support entirely upon the evidence.

Rebecka Hilsman was fifty-six years old at the time she entered into the antenuptial agreement; she was a widow; as one of the executors of her first husband's estate and legatee of one-half of it, she had had some experience in real estate transactions and legal matters, and she possessed property of the approximate value of $35,000.

Louis Schnibbe when he entered into the agreement was about fifty-eight years of age; he was a widower and had grown up children; he had real property of the value of $91,000 and personal property amounting to $93,000.

Plaintiff testifies that she married Schnibbe only for companionship. She seems, however, to have entertained a strong suspicion or fear that he was marrying her for her money. It is quite clear that in entering into the agreement she did not confide in or trust Schnibbe. She testifies: " I was afraid. We generally get married, if not for love, for money, and for that reason I wasn't going to give up my money for any man."

She further testifies: " Well generally the wife has to give up everything and the man takes everything, and how many men is there that just brings the money all through. If he gets married to a woman that has a little money then the men take it and speculate or anything, then by and by they have not got anything. I was going to be on the lookout for myself."

Schnibbe's reason for proposing the contract was to placate his children by his first wife in their opposition to his second marriage. On this subject plaintiff testifies as follows: " Well, we were engaged and Mr. Schnibbe * * * that came only after the engagement, and then Mr. Schnibbe come * * * well he had such a lot of trouble, those children they were so terribly against him, if I wouldn't sign at all * * *

it was Mr. Schnibbe brought it up first after we were engaged and then afterwards he came up with that."

The parties having reached the preliminary understanding in reference to the agreement above indicated, they went to the office of her lawyer, Mr. Keller, the day before their wedding for the purpose of having the agreement drawn up and executed. Mr. Keller had acted as plaintiff's legal adviser in the settlement of her first husband's estate, and she testifies that she had confidence in him in every way. Plaintiff and Schnibbe talked the matter over with Mr. Keller. The agreement was drawn up, read to the plaintiff and executed.

Plaintiff testifies that at the time she entered into the agreement she did not know what her right of dower was or had ever heard the word dower; that she did not know the amount or value of Schnibbe's real estate, and that she believed it to be the law that the husband acquired all of his wife's property upon marriage. If this testimony is true, a most serious reflection is cast upon the faithfulness or competency of Mr. Keller. The witness Levett, however, testifies in effect that before the agreement was executed Mr. Keller explained to her in detail the respective property rights of husband and wife in each other's property; that Mr. Schnibbe had stated in answer to an inquiry of Mr. Keller that he had about $100,000 in real estate, and that plaintiff had stated to Mr. Keller that she understood she was waiving her dower right, and reiterated several times that she wanted nothing in Mr. Schnibbe's property and that he should have nothing in hers.

Upon the witness stand plaintiff appeared to be capable and intelligent. It was to her interest in this action to profess ignorance of her dower rights and of the real estate of her prospective husband, and a

misunderstanding of the rights which he would acquire in her property upon marriage. A comparison of her testimony in this regard with other portions thereof leads to the belief that it is to some extent disingenuous.

It seems to me that the evidence shows that in entering into the agreement Schnibbe did not assume a confidential relation toward the plaintiff, but that they stood upon equal footing; that the plaintiff had the protection of a faithful and competent lawyer, and that plaintiff was not induced to enter into the agreement by fraud, mistake or undue influence.

The evidence in this case also satisfies the rule which requires strict proof of the fairness of an antenuptial contract where its enforcement against the wife is sought. *Pierce v. Pierce,* 71 N. Y. 154; *Graham* v. *Graham,* 143 id. 573.

Under the contract as explained by the evidence it appears not only that it was not improvident, but that it was to the financial advantage of plaintiff to enter into it. Evidently at the time of entering into the contract it was in the contemplation of the parties that by her marriage with Schnibbe plaintiff would become entitled to the support of a man worth about $200,000, during his lifetime, and after his death she would have her own property amounting to $35,000 upon which to depend for her support. In absence of any evidence to the contrary it is to be presumed that she did receive the support from Schnibbe to which she was entitled, and that at his death she still had her own property intact. Under these circumstances equity and justice require the enforcement of this contract against plaintiff unless the statutes of this state incapacitate an adult woman, acting with her eyes open, from making an antenuptial contract not to claim dower upon any terms she may choose.

2. It is contended in substance in behalf of plaintiff that the agreement was void on the ground that neither the benefits to be secured by her contemplated marriage to Schnibbe, nor his covenant that she should retain all her property, real and personal, as her own, nor his covenant that one dollar should be paid her at his death out of his estate, constitute a " pecuniary provision " for plaintiff's benefit in lieu of dower within the meaning of section 198 of the Real Property Law.

This section of the Real Property Law refers to and is connected in subject with the prior section relating to jointure (§ 197). Both sections are therefore quoted. They read as follows:

" § 197. When dower is barred by jointure:— Where an estate in real property is conveyed to a person and his intended wife, or to the intended wife alone, or to a person in trust for them or for the intended wife alone, for the purpose of creating a jointure for her, and with her assent, the jointure bars her right or claim of dower in all the lands of the husband. The assent of the wife to such jointure is evidenced, if she be of full age, by her becoming a party to the conveyance by which it is settled; if she be a minor, by her joining with her father or guardian in that conveyance.

" § 198. When dower barred by pecuniary provisions:—Any pecuniary provision, made for the benefit of an intended wife and in lieu of dower, if assented to by her as prescribed in the last section, bars her right or claim of dower in all the lands of her husband."

A review of the history of this statute is necessary in order to determine whether or not it was the intention of the legislature in enacting it, not only to prescribe the limitations of a jointure which will bar dower at law, but also to place limitations on the right in equity of a woman of full age to make a contract

in contemplation of marriage that her dower shall be barred.

The provisions of sections 197 and 198 of the Real Property Law in relation to jointure are substantially unchanged from those contained in the Revised Statutes when adopted in 1830. R. S. pt. 2, chap. 1, tit. 3, §§ 9, 10, 11. The provisions of the Revised Statutes were a substitute for section 8, 1 Revised Laws, 58. That section of the Revised Laws is substantially a transcript of the section of the English Statute of Uses relating to jointure. 27 Henry 8, chap. 10, § 6. The English statute received a very strict construction by the court. Under it the jointure must consist wholly of land and must conform to all the requirements prescribed. The principal requirements were as follows: 1. It must take effect immediately upon the death of the husband. 2. It must be for her own life at least. 3. It must be made to herself and not to another in trust for her. 4. It must be made and expressed in the deed to be in full satisfaction of her dower. 2 Blacks. Com. 137.

Courts of chancery, however, recognized and enforced contracts made in contemplation of marriage, if fairly entered into, in which the woman covenanted that her dower should be barred, although the contract did not make the statutory provision for her.

There is a conflict in the authorities of the period prior to the Revised Statutes as to whether or not in equity an adult woman before marriage had an unlimited right to contract herself out of dower.

In Clancy on Husband and Wife (2d Am. ed. 1837) 220, the rule is stated as follows: "And first, it is settled, that any provision, however inadequate or precarious it may be, for which a woman contracts, and which she agrees to accept in lieu of her dower, may be a valid jointure in equity. There is but one excep-

tion to this rule, namely, 'when the woman is an infant * * *.''

And after reviewing the law where the woman is an infant, the same author further states (p. 222); '' But if the woman be an adult, she may contract for any species of provision, however small and uncertain, in lieu and satisfaction of her dower, and she will be barred by it.''

In *Caruthers* v. *Caruthers,* 4 Bro. C. C. 500, 513, Lord Alvanley says: '' I do not say, that if she had been adult, she might not have bound herself. She might have taken a provision out of the personal estate, or she might have even taken a chance, in satisfaction for her dower, acting with her eyes open, but an infant is not bound by a precarious interest.''

This language of Lord Alvanley justifies the conclusion that it was his opinion that an intended wife, not under disability, may in equity by an antenuptial agreement contract herself absolutely out of dower, and it seems to me that the weight of the English authorities sustains Lord Alvanley's view.

Sir A. Hart, Master of Rolls, expresses, however, a contrary opinion in *Power* v. *Sheil,* 1 Moll. 296. In that case he observes: '' The law says the intended wife shall not by contract bar her dower, except certain requisites are complied with. Equity may dispense with the form of the requisites, but not with the substantial matter which they all tend to; that is, a solid provision for the widow, such as was agreed upon by the contracting parties. A court of equity deals with an equitable interest precisely as a court of law would with a legal one. It preserves the analogy, and by no means looks at this directly as an agreement independent of that analogy.''

In *Dyke* v. *Rendall,* 2 DeG., M. & G. 209, 216, Lord

St. Leonards disapproves Sir A. Hart's statement of the law in *Power* v. *Sheil* in the following language: " I confess, however, that I do not understand the observation attributed to him (Sir A. Hart) to the effect that an adult female can not in equity contract herself absolutely out of dower. In my opinion there can be no doubt whatever of her right so to contract previously to her marriage, and to bar herself of all dower or thirds that may accrue to her from her husband's estate; if this is so, the question is what has the plaintiff here contracted for."

Lord St. Leonards in the same case further says: "As to the authorities they are few. The rule of the court is, I think, correctly stated by Lord Alvanley, in *Caruthers* v. *Caruthers* (4 Bro. C. C. 500) that an adult female may take any thing in bar of her dower, that she may take a provision out of the personal estate, or ' even a chance in satisfaction for her dower, acting with her eyes open.' "

The rule laid down by the English authorities above referred to that an adult woman has in equity an absolute right of contract seems to have been recognized in this state in the case of *McCartee* v. *Teller*, 2 Paige, 511, where an antenuptial contract of an infant female, made before the adoption of the Revised Statutes, was under consideration. In that case the chancellor says (p. 559) : " But an adult female might in equity bind herself by an antenuptial agreement, to receive a simple pecuniary provision, although uncertain as to the time of its commencement, or as to the extent of its duration (Per Lord Alvanley, 4 Bro. C. C. 513; Clancy, 221, 2; 1 Mod. Rep. 613). To make a mere equitable jointure binding on the infant it was necessary that the provision should be beneficial to the infant and as certain as that required in a legal jointure to constitute a legal bar."

In the present case we are called upon to construe the statutory provision introduced by the Revised Statutes as to the barring of dower by a pecuniary provision (1 R. S. 741, § 11; Real Prop. Law, § 198) in so far as it relates to a woman of full age.

It appears from the revisers' notes that it was their intention by the sections of the Revised Statutes in relation to jointure to extend the principle of the existing statute so as to embrace any provision, whatever might be its nature, thereby making the statute law conform to and follow the then existing law of equity. 3 R. S. (2d ed.) 597. In other words the provisions of the Revised Statutes are to be regarded as only declarative of the law of equity as it existed before their adoption.

It seems to me that the language of the Revised Statutes clearly indicates that the revisers followed the authorities which laid down the rule that an adult woman, in equity, has an absolute right to contract herself out of dower. In the words of the statute " any " pecuniary provision made for an intended wife in lieu of dower " if assented to by her," and her assent, if she be of full age, is evidenced by her becoming a party to the contract by which the provision is made, bars her dower.

The Married Woman's Act of 1849 introduced into the statute law of this state the broad, sweeping provision that: " A contract made between persons in contemplation of marriage, remains in full force after the marriage takes place." Laws of 1849, chap. 375, § 3; Dom. Rel. Law, § 53.

It is contended on behalf of the plaintiff that this provision of the Married Woman's Act had no application to contracts creating jointure for the reason that such contracts had been previously authorized and regulated by the Revised Statutes, and that it is not

to be presumed that it was the legislative intent in
enacting the broad provision of the Married Woman's
Act to change those statutes by implication. This
argument, however, is without force if there is no con-
flict between the statutes. The Revised Statutes do
not require that an *adequate* or *substantial* pecuniary
provision shall be made to the intended wife, but pro-
vide that *any* pecuniary provision *assented to by her,*
if of full age, by becoming a party to the contract, bars
her dower. It would seem that under the Revised
Statutes such a contract upon any legal or good con-
sideration could be enforced against her after mar-
riage, and that there is no conflict in this respect
between the Revised Statutes and the Married
Woman's Act.

The substance of plaintiff's contention is that there
is to be placed on the jointure provisions of the Revised
Statutes a construction which would incapacitate an
adult woman from making an antenuptial contract to
release her dower for a good and legal consideration,
such as marriage, mutual covenant and one dollar,
that is acceptable to her, in that it limits her right of
contract to such money consideration as the courts
might deem substantial or adequate.

Such construction is reactionary and a reversion to
the laws of the dark ages, which deny to women equal
rights with men. It ignores the revulsion against that
law which was initiated by courts of chancery, and
followed in the Revised Statutes, and which culminated
in the Married Woman's Act of 1849.

The plaintiff relies mainly on the case of *Curry* v.
*Curry,* 10 Hun, 366, which was decided by the General
Term of the fourth department in 1877, to support her
contention.

In the *Curry* case the consideration recited in the
antenuptial agreement not to claim dower was mar-

Supreme Court, November, 1919.        [Vol. 109.

riage and one dollar. The court disposes of the dollar consideration by a statement that it was not paid to the intended wife, and thereupon proceeds to consider the case as though the agreement was one in consideration of marriage only, reaching the conclusion that marriage alone was an insufficient consideration to support the agreement, for the reason, among others, that the Revised Statutes (1 R. S. 741, § 11) required that such an agreement should be supported by a pecuniary provision or consideration. The court does not decide or express an opinion whether or not the one dollar, if it had been paid to the intended wife, would have been a sufficient consideration under the Revised Statutes to support the agreement.

The *Curry* case was criticized by the General Term of the second department in *Matter of Young,* 27 Hun, 54; affd., 92 N. Y. 235; in the following language: " The principle decided in that case that such a consideration must be proven to uphold an agreement made in contemplation of marriage does not seem to be supported by any good reason. It was an agreement under seal. It was an instrument containing mutual covenants. It was in contemplation of marriage. It was declared good after marriage by the statute (referring to L. 1849, ch. 375) between the parties."

In *Clark* v. *Clark,* 28 Hun, 509, the General Term of the second department again refused to approve the *Curry* case, saying: " Marriage alone may not be a sufficient consideration. It was held in *Curry* v. *Curry* (10 Hun, 366) that it is not. It is unnecessary to express an opinion on that point. We therefore forbear to do so. But we can not concur in the observation of the learned judge in that case, that ante-nuptial contracts are against public policy. On the contrary, we think that the current of decisions respecting mar-

riage settlements shows that when such contracts are freely and fairly entered into, they are generally conducive to the welfare of the parties thereto and subserve the best purposes of the marriage relation.''

The General Term of the first department, however, in *Graham* v. *Graham,* 67 Hun, 329, follows the *Curry* case in holding that marriage is an insufficient consideration to support such a contract under the statute requiring a pecuniary provision to be made. The *Graham* case was affirmed in 143 New York, 573; but the Court of Appeals affirms it solely upon the ground that it was not shown by the evidence that the intended wife understood the effect of the contract, without expressing its view of the question of law whether marriage was or was not a sufficient consideration under the Revised Statutes.

It seems to me that the view of the law expressed in the opinion in the *Curry* case cannot be regarded as having been generally accepted by the courts of this state, and that it is a doubtful authority.

Moreover, the consideration for the agreement in the present case was not marriage only, but marriage, Schnibbe's covenant that plaintiff should hold, retain and dispose of all her property as if she had remained single, and his covenant that she should be paid one dollar out of his estate.

· It has been held that mutual covenants by the parties to an antenuptial agreement that neither should have any right or interest whatever in or to the property of the other constitute a sufficient consideration to each of the parties thereto for the rights relinquished by the other. *Clark* v. *Clark, supra; Matter of Young* v. *Hicks,* 92 N. Y. 235.

· Schnibbe's covenant that one dollar should be paid plaintiff out of his estate was fully performed. By his will be bequeathed her one dollar, and after his death

his executors duly tendered plaintiff that sum. The words " pecuniary provision " in section 198 of the Real Property Law strictly mean a provision consisting of money. The covenant for the payment of one dollar is sufficient to satisfy the statute, if such technical construction is required, since under the statute plaintiff could assent to *any* sum. It seems to me, however, that if an intended wife may contract for any money provision, no matter how small, as the statute permits her to do, there would seem to be no reason why she should not be permitted to dispense with a money provision entirely and contract to release her dower for a consideration other than money, such as marriage. The Married Woman's Act of 1849 made all antenuptial contracts without any restriction enforceable after marriage.

The agreement in the present case was fairly and freely entered into by plaintiff acting under the advice of a competent attorney; it is a contract which a reasonably prudent person, situated as plaintiff was, would make; it complied in form to the requirements of sections 197 and 198 of the Real Property Law; Schnibbe fully performed his part of the contract; plaintiff received her support during Schnibbe's lifetime, and at his death she had her own property intact. There is no legal or equitable reason why the agreement should not be enforced against her.

Judgment for the defendants dismissing complaint on the merits, with costs.

*Judgment accordingly.*